IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2004

## MARIO PERRY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26622     Joseph B. Dailey, Judge**

──────────────

**No. W2003-02220-CCA-R3-PC  - Filed June 8, 2004**

──────────────

The petitioner, Mario Perry, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his guilty plea to second degree murder and resulting sentence of twenty-two years.  He contends that he received the ineffective assistance of counsel because his trial attorney failed to explain lesser included offenses and possible defenses with him.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Mario Perry.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel; William L. Gibbons, District Attorney General; and Betsy Lynn Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the petitioner's involvement in the robbery of Oil City on October 13, 1999, and the resulting death of the victim, Abnam Ali.  At the guilty plea hearing, the state presented the following factual account of the crimes:  The victim was visiting his brother, Falot Ali, at Oil City, when the petitioner, Antonio Munford, David Bond, and William Johnson decided to rob the store.  After milling around the store, the petitioner approached the victim's brother at the counter, pointed a shotgun at him, and forced him to lie on the ground.  Mr. Munford approached the counter, grabbed the store gun, and stole money from the cash register.  The victim then emerged from the back of the store and Mr. Munford shot the victim in the eye, killing him.  The petitioner, Mr. Munford, and Mr. Johnson fled the store and left with Mr. Bond.  Later that night, the four men divided the money from the robbery.

At the evidentiary hearing, the petitioner testified that his trial attorney met with him six to seven times but never discussed strategies with him. He said that he rejected the prosecution's offer of a twenty-five-year sentence and told his attorney that he wanted to go to trial but that his attorney told him that would be a mistake. He acknowledged stating that he was happy with his attorney at the guilty plea hearing but said that he made this statement just to "get it over with." He said he felt that he had no choice but to plead guilty because his attorney never discussed any defenses with him and told him that he could not win at trial. He said he told his attorney that Mr. Munford was willing to testify on his behalf at trial. He said he never received any money from the robbery. He stated he never intended to rob the store but had no choice because he was in a gang. He claimed it would have been a death violation for him to refuse to participate in the robbery. He stated that he told his attorney about this but that his attorney never discussed using his gang affiliation to claim duress as a defense at trial. He said his attorney never discussed his being an accomplice and only said that he could not win because the petitioner had admitted participating in the robbery and had a gun. He said his attorney never told him that if he went to trial, he may be convicted on a lesser offense, such as reckless homicide or negligent homicide. He stated that he told his attorney he was intoxicated on marijuana and crack cocaine at the time of the robbery but that his attorney never discussed using his intoxication as a defense. He said his attorney never discussed trying to suppress his confession because the police did not have probable cause when they arrested him or because his confession was coerced. He said he told his attorney that he had seizures including one causing a blackout during the robbery but that his attorney never discussed using his blackout as a defense. He said he would not have pled guilty had he known about possible defenses in his case.

The petitioner's trial attorney testified that a jury may have viewed the petitioner as an accomplice at trial. He said he discussed trial strategies with the petitioner but told him that any defense he used was not likely to succeed because of the petitioner's confession and his gang affiliation. He said that if he had been forced to go to trial, he would have argued that the petitioner was merely an accomplice, not a leader during the robbery. He acknowledged that he did not research the natural and probable consequences rule extensively before the petitioner pled guilty because he did not believe a jury would accept an argument based on this theory. He said he discussed lesser included offenses and a duress defense with the petitioner. He said he did not remember the petitioner telling him that he was on drugs during the robbery. He said that if the petitioner had told him that he was intoxicated during the robbery, the attorney probably would have written it in his notes but stated that his notes did not reflect the petitioner claiming to have been on drugs. He said that he remembered the petitioner telling him that he could have been killed if he had refused to participate in the robbery and that they discussed using this in a duress defense. He said that he believed the police had probable cause for the petitioner's arrest and, therefore, that his confession could not be suppressed. He said he viewed the videotape of the incident and believed that he recognized the petitioner on the tape. He said that although he believed the petitioner was "slow," he did not think that a mental health evaluation was needed. He said the petitioner never told him that he blacked out during the robbery.

The petitioner's attorney testified that when the prosecutor made its first offer of thirty or forty years, the defendant responded that he wanted to go to trial. He said he explained release

eligibility to the petitioner after the prosecutor offered a twenty-five-year sentence. He said the prosecutor lowered either the original offer of life in prison to twenty-five years or the twenty-five-year offer to twenty-two years because the petitioner had let an innocent bystander leave the store during the robbery. He said that although reluctant, the petitioner ultimately made his own decision to plead guilty and accept the prosecutor's offer of twenty-two years in prison. On cross-examination, the petitioner's trial attorney testified that the proof against the petitioner included the videotape of the robbery, still photographs showing the petitioner's participation, a fingerprint from the petitioner that was found at the store, the petitioner's confession, and two codefendants that the prosecutor planned to call to testify against the petitioner. He said that although he told the petitioner that he needed to plead guilty, he did not coerce the petitioner into pleading guilty and believed that duress would not have been a good defense for the petitioner.

The trial court found that the petitioner's attorney adequately discussed the case with the petitioner and that the petitioner fully understood his guilty plea. The trial court further found that the attorney's representation of the petitioner was "outstanding." It denied the petition for post-conviction relief.

The petitioner claims that he had no choice but to plead guilty because his attorney told him that he could not win at trial, never explained possible defenses with him, and did not tell him that he could be convicted of a lesser offense at trial. He argues that if his attorney had explained defenses that he could raise at trial, he would not have pled guilty. The state claims that the petitioner's attorney was not ineffective. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy

or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

The burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

In the present case, the petitioner is essentially asserting that we should accept his testimony over that of his trial counsel. The trial court's findings reveal that it resolved the issue of credibility in favor of trial counsel. The record does not preponderate against this finding. Regarding the petitioner's claim that he received the ineffective assistance of counsel because his trial attorney failed to explain lesser included offenses and a duress defense, the trial court obviously accredited the attorney's testimony, who testified that he explained both lesser included offenses and a duress defense with the petitioner. As to the petitioner's claim that his attorney failed to discuss with him a voluntary intoxication defense, the attorney testified that he did not remember the defendant telling him that he was intoxicated during the robbery and said that his notes from his meetings with the petitioner did not reflect that this conversation took place either. The petitioner has not shown that his attorney was ineffective.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE